UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

KINGVISION PAY-PER-VIEW LTD.              :
as Broadcast Licensee of the MAY 14, 2005,
WRIGHT/TRINIDAD Program                   :

                              Plaintiff,  :      **REPORT AND**
                                                 **RECOMMENDATION**
              -against-                   :      **TO THE HONORABLE**
                                                 **RICHARD J. HOLWELL**[*]

PABLO RODRIGUEZ, Individually and as      :
officer, director, shareholder and/or principal        06 Civ. 4314 (RJH)(FM)
MI VIEJA ESPANA RESTAURANT CORP.          :
d/b/a MI VIEJA ESPANA RESTAURANT,
and MI VIEJA ESPANA RESTAURANT            :
CORP., d/b/a MI VIEJA ESPANA
RESTAURANT,                               :

                              Defendants. :

---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

              In this action, plaintiff KingVision Pay-Per-View, Ltd. ("KingVision")

alleges that on May 14, 2005, defendant Mi Vieja Espana Restaurant Corp., d/b/a Mi

Vieja Espana Restaurant ("Restaurant") and its principal, defendant Pablo Rodriguez

("Rodriguez"), illegally intercepted satellite signals that were being used by KingVision

to transmit a boxing match (the "Program"), thereby violating the Cable Communications

---

[*]        This Report and Recommendation was prepared with the assistance of Harlan
Zaback, a student at the California Western School of Law, who is serving as an intern in my
Chambers.

Policy Act ("Communications Act"), as amended, 47 U.S.C. §§ 553(a)(1), 605(a), 605(e)(4).  On October 12, 2006, following the Restaurant's failure to answer or otherwise appear in this action, Your Honor granted KingVision's motion for a default and referred the matter to me to conduct an inquest.  (Docket No. 14).

By order dated November 1, 2006, KingVision was directed to serve and file an inquest memorandum by January 2, 2007, accompanied by supporting affidavits and exhibits, setting forth its proof of damages, as well as proposed findings of fact and conclusions of law.  (Docket No. 16).  The order further directed the defendants to respond by January 16, 2007.  (Id.).  After both deadlines had passed, KingVision's counsel, Julie Cohen Lonstein, Esq., submitted KingVision's inquest papers and sought a nunc pro tunc extension of time, a remedy that regrettably she has sought several times in other cases before me.  The proposed order that she submitted, however, did not seek an extension of time for the defendants to respond to KingVision's papers.  (Docket No. 17).  Accordingly, by order dated May 25, 2007, I granted Ms. Lonstein's application and directed the defendants to submit opposition papers by June 18, 2007.  (Docket No. 18).  Neither defendant complied.

For the reasons set forth below, I now recommend that KingVision be awarded $12,986.50, consisting of $11,450 in statutory damages, $1,036.50 in attorneys fees, and costs in the amount of $500.

II.   Standard of Review

In light of Rodriguez's default, KingVision's well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F.Supp.2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages on the claim, see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

III.   Relevant Facts

The unrefuted allegations of KingVision's complaint, together with its inquest papers, establish as follows:

KingVision had a license from Don King Productions to distribute the Program on May 14, 2005, via closed-circuit television and encrypted satellite signal. (Compl. ¶ 15; Aff. of Donna K. Westrich, sworn to on Sept. 7, 2006 ("Westrich Aff."),

¶ 3).  Among the rights granted to KingVision was the right to allow other entities to broadcast the Program.  (Compl. ¶ 16).

At approximately 11:30 p.m. on May 14, 2005, KingVision's auditor, Felix Garcia, visited the Restaurant.  (See Aff. of Felix Garcia, sworn to on May 25, 2005, at 1).  Garcia observed about forty customers who were watching the Program on a television set at the Restaurant, a facility that evidently could hold one hundred patrons.  (Id. at 1).  The Restaurant was not authorized to receive the Program.  (See Compl. ¶ 18).  The rate card for the Program establishes that the Restaurant would have paid approximately $1,450 ($12.50 x 100 patrons + $200 DirecTV fee) had it entered into a contract with KingVision to show the Program to its customers.  (Westrich Aff. Ex. B).

IV.   Discussion

A.   Jurisdiction

This action arises under 47 U.S.C. § § 553 and 605.  The Court therefore has jurisdiction pursuant to 28 U.S.C. § 1331.

B.   The Defendants' Violations of 47 U.S.C. § § 553 and 605

Sections 553[1] and 605[2] of Title 47 of the United States Code prohibit the unauthorized interception and reception of cable programming services.  Barnes, 13

---

[1]     47 U.S.C. § 553(a) provides, in pertinent part, that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[2]     47 U.S.C. § 605 provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."

F. Supp. 2d at 547-48 (citing Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996)); Cablevision Sys. N.Y.C. Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) ("In contrast to [S]ection 553, which by its statutory language applies only to transmissions via cable systems, [S]ection 605(a) applies to 'the interception of cable-borne, as well as over-the-air, pay television' where cable-borne transmissions originate as satellite transmissions.  Thus, when pay television programming is transmitted over both cable and satellite mediums, both statutes apply . . . ."  (quoting Sykes, 75 F.3d at 130)(citations omitted)).

When a court determines that a defendant's conduct has violated both Sections 553 and 605 of the Communications Act, a plaintiff may recover damages under one of those sections only.  Sykes, 75 F.3d at 127; Barnes, 13 F. Supp. 2d at 548; Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993).  An aggrieved cable operator may, however, elect to recover damages under Section 605 in consideration of its higher damages award.  Barnes, 13 F. Supp. 2d at 548.

The Program that the Restaurant intercepted originated via satellite uplink and was sent to KingVision via satellite signal.  (See Compl. ¶ 15).  KingVision possesses "proprietary rights" in the communications that Rodriguez intercepted without authorization, and therefore is a "person aggrieved" within the meaning of 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A).

-5-

Section 605(e)(3)(C)(i)(II) of Title 47, United States Code, allows statutory damages for "each violation of subsection (a) of this section . . . in a sum not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i). Additionally, if a court finds the statute was violated "willfully and for the purpose of commercial advantage or private financial gain," it may, in its discretion, award an additional sum, up to $100,000. Id. § 605(e)(3)(C)(ii). Here, KingVision seeks the maximum statutory damages of $10,000, plus enhanced damages for wilfulness in the amount of $100,000, or a total of $110,000. (See Docket No. 17 ("Pl.'s Mem."), at 7).

The damages to be assessed pursuant to Section 605 rest within the sound discretion of the Court. See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); Entm't by J & J Inc. v. Mama Zee Rest. & Catering Servs, Inc., No. 01 Civ. 3945 (RR)(SMG), 2002 WL 2022522 at *3 (E.D.N.Y. May 21, 2002). Because the statute provides little guidance on how damages should be assessed, some courts have calculated statutory damages based on the number of patrons in the establishment at the time of the violation. See, e.g., Entm't by J & J, Inc., v. Friends II, Inc., No. 02 Civ. 585 (JES)(RLE), 2003 WL 1990414 at *3 (S.D.N.Y. Apr. 25, 2003) (awarding $20 per patron based on sublicensing fee per potential patron); Entm't by J & J, Inc. v. Nina's Rest. and Catering, No. 01 Civ. 5483 (KMW)(RLE), 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (awarding $20 per patron); Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (awarding $50

per patron).  Other courts have simply imposed damages in a flat amount.  See e.g. Entm't

by J & J Inc. v. Suriel, 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11,

2003) (awarding $11,000); KingVision Pay-Per-View Ltd. v. Papacito Lidia

Luncheonette, Inc., 01 Civ. 7575 (LAK)(AJP), 2001 WL 1558269, at *2 (S.D.N.Y. Dec.

6, 2001) (awarding $20,000); KingVision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F.

Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $15,000).

　　　　　In this case, KingVision urges the court to use "the capacity of the

establishment as the multiplier in setting statutory damages."  (Pl.'s Mem. at 2).  The

capacity of the Restaurant appears to be a reasonable basis for determining damages

because KingVision's rate card for the program indicates that an establishment seeking to

display the Program would pay a fee of $12.50 per seat based on fire code occupancy,

plus a $200 DirecTV authorization fee.  (See Westrich Aff. Ex. B).  Assuming that the

KingVision auditor's estimate of the capacity of the Restaurant is approximately the same

as what the fire code would permit, KingVision's actual damages are approximately

$1,450 ($12.50 x 100 + $200).  I therefore recommend that KingVision be awarded actual

damages in that amount.

　　　　　Additionally, from the way in which the Program was displayed, it is clear

that the violation was not inadvertent and occurred for the purpose of commercial

advantage.  KingVision is therefore entitled to recover enhanced damages in an amount

which will send the message that cable piracy will not be tolerated.  See 47 U.S.C.

§ 605(e)(3)(C)(ii); <u>KingVision Pay-Per-View Ltd. v. Cardona</u>, No. 03 Civ. 3839

(GBD)(FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004).  I recommend that

KingVision be awarded an additional $10,000 for that purpose.

     C.    <u>Attorney's Fees</u>

     Section 605 authorizes a court to "direct the recovery of the full costs

including the award of reasonable attorneys' fees to an aggrieved party who prevails."  47

U.S.C. § 605(e)(3)(B)(iii).  In the present case, both the hours that Ms. Lonstein and her

paralegal billed and their billing rate are reasonable.  Accordingly, KingVision is entitled

to recover legal fees in the amount of $1,036.50.  (<u>See</u> Aff. of Julie Cohen Lonstein Esq.,

sworn to on Sept. 21, 2006 ("Lonstein Aff."), ¶ 4).

     D.    <u>Costs</u>

     KingVision seeks to recover investigative costs in the amount of $350

allegedly arising out of Garcia's visit to the Restaurant.  (<u>See</u> <u>id.</u> ¶ 3).  This request must

be denied for two reasons.  First, the taxable costs for which a party may seek

reimbursement are limited to specific items, 28 U.S.C. § 1920; Fed. R. Civ. P. 54; Local

Civ. R. 54.1, which do not include the cost of an investigator.  <u>See</u> <u>Crawford Fitting Co.</u>

<u>v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441-42 (1987) ("costs" include only the specific items

enumerated in 28 U.S.C. § 1920); <u>see</u> <u>also</u> <u>Whitfield v. Scully</u>, 241 F.3d 264, 270-71 (2d

Cir. 2001) (deference should be accorded to a district court's interpretation of its own

local rule).  Second, even if investigative expenses were recoverable, the exhibit upon

which KingVision relies is utterly silent as to the amount that the investigator was paid. (See Westrich Aff. Ex. D).

KingVision is entitled, however, to recover $350 for the filing fee and $150 for the cost of effecting service of process. (See Lonstein Aff. ¶ 3).

V.    Conclusion

For the reasons set forth above, KingVision should be awarded judgment in the amount of $12,986.50, consisting of $11,450 in statutory damages, $1,036.50 in attorneys fees, and costs in the amount of $500.

VI.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard J. Holwell, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York, 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e).

Dated:       New York, New York
             June 20, 2007


                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge


-9-

Copies to:

Julie C. Lonstein, Esq.
Lonstein Law Office P.C.
Fax: (845) 647-6277

Pablo Rodriguez
Mi Vieja Espana Restaurant Corp.
263 Sherman Avenue
New York, New York 10034